UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WAYNE COVER, | ) | |
| | ) | |
| Plaintiff | ) | **ECF Case** |
| | ) | |
| v. | ) | Civil Action No.:05-CV-2430 |
| | ) | (Magistrate: LMS) |
| AMERICAN POSTAL WORKERS | ) | |
| UNION, AFL-CIO, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT OF
DEFENDANT AMERICAN POSTAL WORKERS UNION, AFL-CIO

I.  INTRODUCTION

This is a breach of contract/duty of fair representation suit filed by Wayne Cover, ("the Plaintiff") an employee of the United States Postal Service ("the Postal Service"), against the Postal Service and the American Postal Workers Union, AFL-CIO, ("the APWU" or "the Union").  Mr. Cover alleges that the APWU did not inform him of a settlement agreement that the Union entered into on his behalf that allegedly affected the outcome of the arbitration of a subsequent grievance. The Union seeks to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Mr. Cover waived his claim against the APWU, or in the alternative, the Union seeks

summary judgment because there are no disputed material facts and the APWU is entitled to judgment as a matter of law.

Mr. Cover's claim against the Union must be dismissed because he waived any and all claims that he had against the APWU relating to the grievance at issue - a seven-day suspension from work. Wayne Cover chose not to be represented by the APWU in the arbitration hearing concerning his seven-day suspension. Instead, he obtained private counsel to represent him and voluntarily entered into a waiver of any claims that he might have against the APWU arising out of the arbitration of his seven-day suspension. Consequently, Mr. Cover's grievance file was turned over to his attorney and his attorney became responsible for all aspects of Mr. Cover's representation at the arbitration of the grievance challenging his disciplinary penalty. As Mr. Cover has waived the instant claim, the Complaint must be dismissed.

II.     STATEMENT OF FACTS

Since 1997, Plaintiff Wayne Cover has been an employee of the Postal Service. (Complaint ¶ 7). On November 11, 2002, Mr. Cover was issued a letter of warning for failure to follow instructions and for leaving his assigned work area without permission, which the Union grieved. (Declaration of Frank Fanelli, hereinafter Fan. Dec., ¶2.). Less than three months later, Mr. Cover was disciplined for similar behavior involving an incident occurring on January 27, 2003. (Fan. Dec. ¶3, Exhibit 1). On February 8, 2003,

he was issued a seven-day suspension for failure to follow instructions and absence from his work area. Id. In its Notice of Seven-Day Suspension to Mr. Cover, the Postal Service cited Mr. Cover's prior November 11, 2002 letter of warning in reaching its decision to suspend Mr. Cover. (Fan. Dec. ¶ 3, Ex.1, page 1). The Union also grieved Mr. Cover's seven-day suspension.[1]

The Union appealed the grievance over Mr. Cover's seven-day suspension to arbitration on May 5, 2003. (Fan. Dec. ¶5). Prior to the arbitration hearing over his seven-day suspension, Mr. Cover requested that his attorney be permitted to handle the arbitration hearing on his suspension rather than the Union. (Fan. Dec. ¶ 6, Declaration of Louise Yannuzzi, hereinafter Yann. Dec., attached as Exhibit B, ¶3, Exhibit 2). Because the Union has a legal duty of fair representation owed to the employees it represents, when a grievant wishes to be represented by his or her own attorney instead of the Union, the grievant, by signing a standardized waiver, must release the Union from this duty and all other liability for the handling of the grievance and the representation of the individual in the grievance-arbitration procedure prior to the Union's agreement to allow a private attorney to represent a grievant. (Fan. Dec. ¶ 7, Ex. 4,Yann. Dec. ¶5, Ex. 4). The Union

---

[1] Less than five months from the issuance of the disciplinary seven-day suspension, Mr. Cover was disciplined again. On May 22, 2003, the Postal Service notified Mr. Cover that he was suspended for fourteen days for failure to perform assigned duties on May 16, 2003. (Fan. Dec. ¶ 4, Ex. 2). In the Notice of 14-Day Suspension, the Postal Service cited both the November 11, 2002 letter of warning and the February 8, 2003 7-day suspension in reaching its decision. Id. The Union also grieved Mr. Cover's 14-day suspension. Id.

3

also requests that these waivers be signed by the grievant to ensure that Union representatives can speak freely with the grievant's attorney as the attorney prepares the grievant's case for arbitration and to ensure that all of the Union's information about the case can be submitted to the attorney without the fear of a subsequent lawsuit against the Union based on the contents of the Union's files or the attorney's conversations with Union agents. (Fan. Dec. ¶7, Ex.4).

On February 26, 2004, Mr. Cover and his private attorney, Lee Nuwesra, signed a waiver so Mr. Nuwesra could represent Mr. Cover in the arbitration of his seven-day suspension. (Fan. Dec. ¶8, Ex. 5, Yann. Dec. ¶3). The February 2004 waiver signed by Mr. Cover and his attorney, Lee Nuwsera, waived "any and all claims" Mr. Cover had or might have against the Union "related to or in any way concerning" the grievance over the seven-day suspension. Id.  Merever, by signing the waiver Mr. Nuwesra agreed to "not bring any action against the APWU...related to or in any way concerning" the grievance over the seven-day suspension.  Id.

Subsequently, the Union agreed to allow Mr. Cover to have his personal attorney represent him in arbitration. (Fan. Dec. ¶ 9, Ex. 4) As Mr. Cover's authorized representative, Mr. Nuwesra had access to Mr. Cover's grievance files, which was turned over to him, and was also authorized to speak with Union agents in preparation for the arbitration of Mr. Cover's seven-day suspension.  Id. Mr. Nuwesra was responsible for all aspects of Mr. Cover's representation for the arbitration of his seven-day suspension,

including any necessary review of Mr. Cover's grievance file.(Fan. Dec. ¶ 9, Ex. 4, Yann. Dec. ¶4). Mr. Cover's grievance file contained notice of the November 11, 2002 letter of warning, a copy of the April 2003 settlement agreement settling the letter of warning and the February 8, 2003 and May 22, 2003 suspension notices. (Fan. Dec. ¶ 9).

The grievance over the seven-day suspension proceeded to arbitration and was heard before Arbitrator Joseph Parker on December 7, 2004. (Fan. Dec. ¶10, Ex. 6). Mr. Nuwesra represented Mr. Cover at the arbitration hearing. Id. The Union did not represent Mr. Cover in the preparation for the arbitration hearing or at the arbitration hearing. (Yann. Dec. ¶¶3-4). Arbitrator Parker issued a decision reducing the notice of suspension issued to Mr. Cover from seven to five days. Fan. Dec. ¶ 10, Ex. 6). Arbitrator Parker based his decision, in part, on the November 11, 2002 letter of warning issued to Mr. Cover. Id.

Mr. Cover has brought the instant action against the Union claiming that Arbitrator Parker's decision to uphold five days of the seven day suspension was because the Union breached its duty of fair representation owed to him.

III.     ARGUMENT

Mr. Cover's claim against the Union must be dismissed because he explicitly waived his right to pursue this claim or any other claim against the Union pertaining to the grievance over his seven day suspension. "'Under New York law, a written contract is

to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed.'" British Int'l Ins. Co. Ltd. v. Seguros LA Republica, S.A., 342 F.3d 78, 82 (2d Cir. 2003) (citing Cruden v. Bank of N.Y., 957 F.2d 961, 976 (2d Cir.1992)). "'Where ... the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence.'" British Int'l, 342 F.3d at 82 (citing Rainbow v. Swisher, 72 N.Y.2d 106, 109, 531 N.Y.S.2d 775, 527 N.E.2d 258 (1988)).

On February 26, 2004, Mr. Cover waived his claim against the APWU when he entered into a waiver of "any and all claims" that he had or might have against the APWU "related to or in any way concerning" the grievance over his seven-day suspension. (Fan. Dec. ¶ 8, Ex. 5, Yann. Dec. ¶ 3.). Mr. Cover and his attorney signed the waiver, thereby permitting the Union to authorize Mr. Cover's attorney to represent him before the arbitrator over his suspension. (Fan. Dec. ¶7, Ex. 4, ¶8, Ex. 5, ¶9, Ex. 4). The APWU was willing to represent Mr. Cover in the arbitration of his seven-day suspension, but he elected to secure a private attorney instead. (Fan. Dec. ¶6). The failure of his attorney to overturn in its entirety Mr. Cover's suspension is not the fault of the APWU.

Mr. Cover alleges that his lack of notice regarding the settlement agreement entered into by the Union on April 11, 2003 over the letter of warning, in some way,

adversely affected the arbitration of his seven-day suspension. (Complaint ¶¶ 12, 21, 33). However, Mr. Cover did have notice of the settlement of the letter of warning prior to the arbitration over the seven day suspension. (Fan. Dec. ¶9). When the Union agreed to Mr. Cover's request that the Union authorize his attorney to represent him during the arbitration, the Union turned over Mr. Cover's grievance files to his attorney, Mr. Nuwesra. (Fan. Dec. ¶9, Yann. Dec. ¶4.). These files contained a copy of the April 2003 settlement agreement. Id. Therefore, if Mr. Cover failed to learn about the settlement of the letter of warning prior to the arbitration of the seven day suspension, it was the fault of his attorney in failing to review his file thoroughly before the arbitration hearing. Mr. Cover and his attorney were placed on notice prior to the arbitration hearing that the Union had settled the letter of warning grievance. (Fan. Dec. ¶ 9.). Accordingly, as Mr. Cover's attorney should have been aware of the settlement of the letter of warning grievance, any failure to consider the settlement in arguing the seven-day suspension case was the fault of Mr. Nuwesra.

     The responsibility of Mr. Cover's representation in the arbitration of the seven-day suspension fell entirely on Mr. Nuwesra. (Fan. Dec. ¶¶7-10). Mr. Nuwesra, as Mr. Cover's representative, had authority to review Mr. Cover's grievance file in preparation of the arbitration and to fully investigate the suspension and related factors by interviewing union officials and members, if he so chose. (Fan. Dec. ¶¶ 7- 9). In addition, Mr. Nuwesra was responsible for formulating any arguments made on Mr.

Cover's behalf at the arbitration. Id. If the arbitrator did not completely overturn Mr. Cover's seven-day suspension and instead only reduced it to five days, Mr. Cover cannot bring the instant claim against the Union because he requested that his personal attorney handle his arbitration and released the Union from any outcome of the arbitration - positive or otherwise.

Mr. Cover's signed waiver is absolutely clear in its waiver of "any and all claims" that he had or might have against the APWU "related to or in any way concerning" the grievance over his seven-day suspension in exchange for authority to have his case handled by his attorney. (Fan. Dec. ¶8, Ex. 5). Moreover, the same waiver form contained an agreement by Mr. Nuwesra that he "would not bring any action against the APWU...related to or in any way concerning" the grievance. Id. Mr. Cover has not claimed that he was coerced into signing the waiver and in fact, the waiver was also reviewed and by his attorney. (Fan. Dec. ¶8, Ex. 5). Thus, Mr. Cover waived his right to sue the APWU concerning the results achieved by his attorney in his arbitration over the seven-day suspension.  By signing the February 2004 waiver, Mr. Cover is contractually precluded from bringing the instant suit. National Helicopter Corp. of America v. City of New York, 137 F.3d 81, 87 (2d Cir. 1998)("A release freely entered into that clearly waives a right to pursue a cause of action is binding."). As the clear language of the waiver clearly prohibits this claim, Mr. Cover's claim against the APWU must be dismissed.

IV. CONCLUSION

For all of the above reasons, the Motion to Dismiss or, in the Alternative, for Summary Judgment, of Defendant American Postal Workers Union, AFL-CIO should be granted.

Dated: May 9, 2005

SPIVAK, LIPTON, WATANABE, SPIVAK, MOSS & ORFAN, LLP

By: /s/ Hope Pordy
Hope Pordy (HP 6253)
Adrienne L. Saldana (AS 8327)
1700 Broadway, Suite 1200
New York, NY 10019
(212) 765-2100/FAX (212) 541-5429

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By: /s/ Josephine A. Escalante
Josephine A. Escalante (JE 6835)
1300 L Street NW, Suite 1200
Washington, DC 20005-4126
(202) 898-1707/FAX (202) 682-9276

Attorneys for the American Postal Workers Union, AFL-CIO